**PLOUGH, INC., a Delaware Corporation, Plaintiff,**

v.

**ALLERGAN, INC., a Delaware Corporation, and Herbert Laboratories, a Division of Allergan, Inc., Defendants.**

**No. 90–2272–4B.**

United States District Court, W.D. Tennessee, W.D.

June 12, 1990.

Glen G. Reid, Jr., Herbert E. Gerson, Kathleen D. Blair, McDonnell Boyd Smith & Solmson, Memphis, Tenn., John W. Nields, Thomas J. Horton, Howrey & Simon, Washington, D.C., for plaintiff.

Prince C. Chambliss, Jr., Paul E. Prather, Armstrong Allen Prewitt Gentry Johnson & Holmes, Memphis, Tenn. (Don W. Martens, James F. Lesniak, Gerard von Hoffman, William C. Rooklidge, Knobbe Martens Olson & Bear, Newport Beach, Cal., of counsel), Harry J. Leonhardt, Irvine, Cal., for defendants.

## ORDER DENYING ALLERGAN'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY OR TRANSFER

McRAE, Senior District Judge.

The present case is a declaratory judgment action brought by plaintiff Plough, Inc. ("Plough") against Allergan, Inc. and its subsidiary Herbert Laboratories (collectively referred to herein as "Allergan") pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The complaint seeks a judgment declaring that Plough has not violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and an order prohibiting Allergan from continuing to harass Plough. Allergan has moved to dismiss the complaint or in the alternative to stay or transfer this action to the United States

District Court for the Central Division of California.

## Background

The parties to this action are manufacturers of products commonly known as sunblocks or sunscreens. Plough produces a line of sunblock products called SHADE, and Allergan's line is called PHOTOPLEX. The instant dispute arises out of a promotional campaign by Plough wherein it claims *inter alia*, that SHADE provides "superior" sunscreen protection to PHOTOPLEX from ultraviolet rays.

Since the early 1970's, some manufacturers have produced sunscreen products which protect a person's skin from ultraviolet B rays or "UVB" rays. In 1976, Plough developed the widely used Sun Protection Factor System or "SPF" system. Until recently, the UVB rays were the only ultraviolet rays known to cause skin complications; however, in the late 1980's, scientists determined that ultraviolet A rays or "UVA" rays could also be harmful to the skin. Thereafter, Allergan developed the PHOTOPLEX line of sunscreen products which provide protection from the harmful UVA rays. After Allergan received approval from the Food and Drug Administration ("FDA") to market PHOTOPLEX, it learned that Plough had also begun to market a new line of SHADE products which claimed to provide protection from UVA rays. In connection with its new line of SHADE, Plough also introduced the "APP System." The APP System, short for UVA Protection Percent, like the SPF system also developed by Plough, is a method for quantifying the percentage of ultraviolet rays blocked by the particular product. The APP, however, lists the percent of UVA rays as opposed to UVB rays blocked by the product.

After making its own investigation, Allergan complained to the FDA about Plough's marketing of SHADE. In a letter to the FDA, Allergan alleged that Plough's promotional materials which were sent to health care professionals and its marketing of SHADE to consumers were false and misleading. Accordingly, Allergan re-quested that the FDA take regulatory action against Plough. (See December 21, 1989 Letter to FDA, Exhibit 1, Plaintiff's materials in support of Motion for Expedited Resolution.) The FDA allegedly advised Plough that any new labeling relating to UVA protection was unacceptable and might be the subject of regulatory action. Nevertheless, Plough continued with its promotional campaign for its new SHADE products.

Thereafter in April 1990, Allergan wrote a letter to Plough. In the letter, Allergan notified Plough that its promotion and marketing of SHADE was false and misleading and in violation of the Lanham Act, 15 U.S.C. § 1125. Allergan requested that Plough cease promotion of SHADE. The letter ended with a statement that "if Plough did not cease promoting SHADE, Allergan would give serious consideration to the legal remedies available." (See April 17, 1990 letter from Allergan to Plough, Exhibit A to the Declaratory Judgment Complaint.)

On April 26, 1990, approximately nine days after receiving Allergan's letter, Plough commenced this action seeking a declaration that it had not violated the Lanham Act and an order prohibiting Allergan from harassing it. On May 11, 1990, Allergan filed suit against Plough in the United States District Court for the Central District of California, alleging that Plough had violated the Lanham Act and had been guilty of unfair competition under California law (hereinafter "the California action"). (Exhibit 1, Defendant's materials in support of Motion to Dismiss.) In the California action, Allergan seeks an injunction requiring Plough to recall its new line of SHADE products and an order enjoining Plough from continuing to make promotional claims that SHADE is superior to PHOTOPLEX. On May 14, 1990, Allergan filed the present motion in this Court, which seeks a dismissal of Plough's complaint or alternatively, an order staying these proceedings or transferring this case to the Central District of California for consolidation with the California action. The parties filed memoranda in support of or in opposition to the motion, and there-

after this Court heard oral argument on the motion. For reasons stated below, Allergan's motion is hereby denied in all respects.

### Discussion

 Allergan's motion first asks this Court to exercise its discretion under 28 U.S.C. § 2201 and dismiss Plough's complaint. It argues that a declaratory judgment is inappropriate in this matter and that the issues raised in this dispute can be better handled in the California action. It is well settled that the decision whether or not to entertain a declaratory judgment action is committed to the sound discretion of the district court. *Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir.1984); *Ven–Fuel, Inc. v. Department of Treasury*, 673 F.2d 1194 (11th Cir.1982). The district court's discretion, however, is not unbridled. There are two standards to which a court should look when deciding whether or not to exercise jurisdiction over a declaratory judgment action set forth in *Grand Trunk*. The Sixth Circuit Court of Appeals identified them as "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." 746 F.2d at 326 (quoting E. Borchard, Declaratory Judgments 299 (2d Ed.1941). The Court further specified five factors that a court should consider before entertaining a declaratory judgment action:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Id.*

Consideration of the above factors leads this Court to conclude that dismissal is unwarranted. Plough's declaratory action and the allowable counterclaims will settle the controversy at issue and it will serve a useful purpose in clarifying the legal relations in issue. A resolution of the declaratory action will determine whether Plough's promotion of SHADE is false and misleading, and it will either leave Plough free to continue its promotion or will limit how it may proceed.

 This Court is not persuaded that Plough has used the declaratory action as a means of "procedural fencing" or as "an arena for a race for res judicata." The complaint alleges that Plough was threatened with litigation by Allergan if it did not cease promotion of SHADE. Plough merely filed suit in order to have a determination from a federal court as to whether its actions were lawful. There is no allegation that Plough coaxed Allergan into delaying to file suit so that Plough could file first and choose its forum. In this day and age, a party who threatens to file suit in order to obtain a concession, but delays, acts at the risk that the threatened party will be the first to file. Absent special circumstances, when there are two competing lawsuits, the first filed has priority. *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177 (2nd Cir.1969).

The fourth factor set forth by the Sixth Circuit in *Grand Trunk* is clearly inapplicable in the present case in that no state court is involved. Finally, the California action does not appear to be an alternative remedy which is better or more effective. The California action will merely address the same issues, namely whether Plough's promotion of SHADE is false and misleading under the Lanham Act, and Allergan may pursue its claims for affirmative relief under the Lanham Act and California Law as counterclaims in this action. Accordingly, the motion to dismiss is denied.

 Alternatively, Allergan has asked this Court to either stay the proceedings in the declaratory action or to transfer this

case to the California federal court pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A decision to transfer under § 1404(a) is "committed to the sound discretion of the trial court," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266–67, 70 L.Ed.2d 419 (1981), and is to be exercised only in "rather rare cases" where the forum chosen is very inconvenient for the defendant, for the witness, and for the plaintiff himself. *Gulf Oil v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). There is "a strong presumption in favor of plaintiff's choice of forum," *Schexnider v. McDermott International, Inc.*, 817 F.2d 1159, 1163 (5th Cir.1987), and plaintiff's choice should not be upset unless the defendant carries his burden of demonstrating that the balance of convenience strongly favors transfer. *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir.1951).

In the present case, the Court concludes that Allergan has failed to carry that burden. Both parties involved do business throughout the United States so that it would appear that each should expect litigation in any state where its products are sold. Also, who the necessary witnesses will be and where they will come from is speculative at this time. Furthermore, the court is unpersuaded by Allergan's claim that this matter would be tried more expeditiously in California. As such, the Court concludes that the balance of inconvenience does not weigh strongly in favor of transfer. Therefore, Allergan's motion to transfer is denied. Furthermore, because Plough's action was the first filed and not improperly, Allergan is not entitled to expect that its preference for venue of trial will be honored.

IT IS THEREFORE ORDERED that Allergan's motion to dismiss or transfer or stay is denied.